IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUSTEES OF THE HEATING, PIPING & REFRIGERATION PENSION FUND, et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-17-3690 |
| CLEAN AIR MECHANICAL, INC., et al., | * | |
| Defendants. | * | |

* * * * * * * * * * * *

## MEMORANDUM

In this suit, the Plaintiffs, Steamfitters Local Union 602 and the trustees of eight multiemployer benefit and trust funds, seek unpaid contributions, liquidated damages, and equitable relief against Defendants Clean Air Mechanical, Inc. ("CAM"), Clean Air Building Services, LLC ("CABS"), James Hardesty Jr., and Diane Hardesty, for alleged violations of contribution and reporting obligations under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, and for breach of fiduciary duty. This Court previously ordered entry of default against all Defendants for failure to plead or otherwise defend under Federal Rule of Civil Procedure 55(a). (ECF No. 76.)

Now pending before the Court is Plaintiffs' unopposed motion to voluntarily dismiss Count VI of the Complaint and for default judgment on all other counts. (ECF No. 78.) The Court finds no need for an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2) (granting discretion to the court to hold hearings if needed to enter or effectuate judgment); Local R. 105.6 (D. Md. 2018). For the reasons set forth below, Plaintiffs' motion will be GRANTED.

*I.     Background*

There are nine plaintiffs in this suit. Plaintiff Steamfitters Local Union No. 602 is an unincorporated labor organization operating under a collective bargaining agreement (CBA). (Am. Compl. ¶ 9, ECF No. 72.) Plaintiffs divide the eight multiemployer funds into two groups: six "Benefit Fund Plaintiffs," and two "Trust Fund Plaintiffs."[1] (*Id.* ¶¶ 1–8; M.D.J. Mem. at 2, ECF No. 78-1.) The Benefit and Trust Funds are financed by employer contributions required by the CBA and their respective Declarations of Trust. (Am. Compl. ¶ 29.)

Defendant CAM, a corporation performing contracting and subcontracting work in pipefitting, steamfitting, and HVAC services in Maryland, is owned by Defendant Hardesty Jr. (*Id.* ¶¶ 10–11, 17, 28.) Defendant CABS, a limited liability company also performing contracting and subcontracting work in the same industries in Maryland, is owned by Defendant Diane Hardesty, who is Hardesty Jr.'s mother. (*Id.* ¶¶ 12–13, 15, 63.) Defendant Diane Hardesty never appeared or filed an answer in this case. Defendants CAM, Hardesty Jr., and CABS all initially appeared and participated in early stages of litigation. CAM and Hardesty Jr. ceased participating in August 2018 and failed to respond to any discovery requests, even after this Court granted a motion to compel. (ECF No. 71.) CABS provided minimal discovery early in the discovery period but ceased participating in defense of the suit in November 2018. CAM and CABS have been without counsel, in violation of Local Rule 101.2(b) (D. Md. 2018), for nine and five months, respectively. (ECF No. 51; ECF No. 68.) CAM, CABS, and Hardesty Jr. violated orders to show cause why sanctions, including default judgment, should not be imposed. (ECF No. 71; ECF

---

[1] The Amended Complaint referred to all eight multiemployer plans as "Benefit Funds" (Am. Compl. ¶ 8), but Plaintiffs later adopted different terminology for clarity, dividing the multiemployer plans into two groups. In this opinion, the "Benefit Funds" are the Heating, Piping and Refrigeration Pension Fund, the Heating, Piping and Refrigeration Medical Fund, the Heating, Piping and Refrigeration Training Fund, the M. Eddie Moore Scholarship Trust Fund, the Steamfitters Local 602 Retirement Savings Fund, and the International Training Fund. The "Trust Funds" are the Industry Promotion Fund and Local 602 Communications and Productivity Fund. (*See* M.D.J. at 2.)

2

No. 74.) Having concluded on this record of non-responsiveness and non-compliance that the Defendants abandoned defense of the suit, the Court entered default under Rule 55(a) against all Defendants on January 23, 2019. (ECF No. 76.)

Plaintiffs thereafter moved for default judgment under Rule 55(b)(2) on Counts I, II, III, IV, V, VII, and VII of the Amended Complaint. Plaintiffs provided the required written notice of the motion on or about February 21, 2019.[2] (ECF No. 78-5.) No Defendant opposed the motion.

## *II. Legal Standard for Entry of Default Judgment*

After entry of default under Rule 55(a), the opposing party may move for default judgment. Fed. R. Civ. P. 55(b)(2); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992). Entry of default against a defendant does not alone entitle a plaintiff to judgment as of right:

> 'The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact . . . [but] is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover.' The court must . . . determine whether the [conceded facts] support the relief sought in [the] action.

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2685 (2016). Courts have discretion to decline to enter default judgment based on the circumstances and the interest of justice. *See, e.g., Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. R.E. Petersen Inc.*, Civ. No. HAR 93-2494, 1994 WL 149633, at *1 (D. Md. Feb. 16, 1994) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)) (discussing the "extensive line of cases" preferring merits-based resolutions); 10A Wright, Miller & Kane § 2685 (collecting cases).

---

[2] Rule 55(b)(2) requires written notice of a motion to any Defendant who previously appeared. This provision did not apply to Diane Hardesty, who never appeared (*see* ECF No. 76), but she was also provided with notice.

## III.  Analysis

No circumstantial considerations weigh against the propriety of default judgment in this case. Given Defendants' failure to participate in development of the factual record or legal theories to oppose Plaintiffs' claims and their repeated violation of this Court's orders and rules, the Court concludes both that a full, merits-based disposition is impracticable and that default judgment in this case would not be improper. ERISA creates an independent right of action for multiemployer plans to enforce contribution requirements provided in collective bargaining agreements. *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). It would be contrary to this central purpose if employers could evade those very obligations simply by refusing to participate in litigation seeking to enforce them.

Plaintiffs seek voluntary dismissal of Count VI of the Amended Complaint, which alleged breach of fiduciary duty against Hardesty Jr. (M.D.J. Mem. at 25.) That request will be granted. The Court will now consider whether Plaintiffs made an adequate showing of their entitlement to the relief sought in the remaining counts.

### A.  Counts I through IV (Unpaid Contributions, Payroll Audit, and Bond)

In Counts I and II, Plaintiffs seek unpaid contributions required by the CBA from CAM and CABS. (Am. Compl. ¶¶ 32–39.) In Counts III and IV, Plaintiffs seek an injunction ordering CAM and CABS to permit a payroll audit and post a bond to protect against future non-payment. (Am. Compl. ¶¶ 40–44.)

#### 1. Liability as to CAM

ERISA obligates employers to make all contributions to multiemployer benefit plans required by a CBA to which the employer is bound. 29 U.S.C. § 1145. If an employer fails to make such contributions, ERISA permits beneficiaries, such as Plaintiffs, to sue to recover unpaid

4

contributions, interest, liquidated damages, and reasonable attorneys' fees, to enjoin future violations, or to obtain other equitable relief. §§ 1132(a)(1), (a)(3), and (g)(2).

The well-pled allegations of the Amended Complaint—which CAM concedes by its default, *Ryan*, 253 F.3d at 780—and the exhibits attached to Plaintiffs' motion establish the following facts: Hardesty Jr. signed an Agreement of Assent on CAM's behalf binding it to the CBA with Steamfitters Local Union No. 602; the Agreement was never terminated; the CBA incorporates the Restated Agreements and Declarations of Trust governing the Benefit and Trust Funds, which require CAM to make monthly reports and contributions for every hour worked by covered employees; CAM failed to pay all contributions owed based on reports submitted between December 2014 and April 2017; CAM failed to submit any reports after April 2017; the Declarations of Trust for the Benefit Funds establish a method of calculating presumed contributions when an employer is delinquent in reporting and entitle the Benefit Funds to seek liquidated damages, interest, and attorneys' fees; and the CBA and Declarations of Trust authorize the Funds to seek audits and bonds to ensure full contributions. Accordingly, Plaintiffs have adequately shown their entitlement to relief against CAM under Counts I through IV.

The Court will enter default judgment against CAM on Counts I, II, III, and IV, adopting the total unpaid contributions, interest, fees and costs as calculated and set forth in a declaration by the Funds' Benefits Administrator.[3] (Swann Decl. ¶¶ 4–6, at APP.092–093, ECF No. 78-3; Swann Decl. Exh. 1, at APP.094–103.) The Court will order CAM to submit to a payroll audit for the period of January 1, 2016 to the present (M.D.J. at 17–18) and to post a bond according to the

---

[3] Those calculations total $423,286.30, which includes: $103,621.34 in unpaid contributions to the Benefit Funds and $1,750 in unpaid contributions to the Trust Funds for the period between December 2014 and April 2017; $203,869.20 in presumed unpaid contributions to the Benefit Funds for the period between May 2017 and December 2018; $46,123.43 in liquidated damages calculated at the rate of 15% on the principal amount of unpaid contributions to the Benefit Funds; $40,807.63 in interest calculated at 10% per annum from the date unpaid contributions to the Benefit Funds came due; and $27,115 in attorneys' fees and court costs, calculated in accordance with Appendix B of the Local Rules (D. Md. 2018). (Swann Decl. at ¶¶ 4–5; Kesler Decl., at APP.147–149, ECF No. 78-3.)

terms of the Contributing Employer Bond Policy adopted by the Funds' Collection Committee. (Loveless Decl. Exh. 12, at APP.088–089, ECF No. 78-3; Loveless Decl. Exh. 11, at App.085.)

### 2. *Liability as to CABS*

CABS has not agreed to the CBA directly. Plaintiffs argue that CABS is an alter ego of CAM, and, thus, jointly and severally liable for CAM's debts and obligations under the CBA. (M.D.J. at 5–10.) The alter ego doctrine "prevent[s] employers from evading their obligations under labor laws and [CBAs] [by] . . . making 'a mere technical change in the structure or identity of the employing entity . . . without any substantial change in its ownership and management.'" *Md. Elec. Indus. Health Fund v. Kodiak Utility Constr., Inc.*, 289 F. Supp. 2d 698, 702 (D. Md. 2003) (quoting *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998)). In the Fourth Circuit, courts consider first "whether substantially the same entity controls the old and new employer," and then, if so, whether the change in structure created a "reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Id.* (quoting *Alkire v. NLRB*, 716 F.2d 1014, 1020 (4th Cir. 1983)); *see also Md. Elec. Indus. Health Fund v. Masters Elec., Inc.*, Civ. No. WDQ-14-3849, 2016 WL 164301, at *4 (D. Md. Jan. 13, 2016). Relevant factors include "continuity of ownership, similarity . . . [in] management, business purpose, operation, equipment, customers, supervision, and anti-union animus." *Kodiak Utility*, 289 F. Supp. 2d at 702 (quoting *Belmont Concrete*, 139 F.3d at 308).

The conceded allegations of the Amended Complaint and Plaintiffs' exhibits establish that: CAM is owned solely by James Hardesty Jr.; CABS is owned solely by Hardesty Jr.'s mother, Diane Hardesty; both entities were formed to conduct contracting and subcontracting work in the same industries and geographies; CABS was registered the same month CAM ceased submitting required reports to Plaintiffs; CABS's business address is the same as one of CAM's business

6

addresses; several months prior to CABS's creation, Hardesty Jr. told one of CAM's clients that, because of financial and legal difficulty, he intended to "move all contracts to Clean Air Building Services," which would "hold all/any warranty" previously "supplied by Clean Air Mechanical" (CABS Production, at APP.221, ECF No. 78-3); Hardesty Jr. was the only salaried employee on CABS's payroll from May 2017 through at least July 2018; he held himself out to CABS's clients as the "Service Manager" (*id.*, at APP.216–220); and CAM previously employed and owed contributions under the CBA for two of the six other employees on CABS's payroll. These facts show continuity of ownership and management, commonality of business purpose, operations, and customers, and circumstances suggesting CAM obtained a financial benefit by transferring operations to CABS and ceasing to pay required contributions to the Benefit and Trust Funds.

Because Plaintiffs made an adequate showing that CABS is an alter ego for CAM and liable for debts under the CBA, default judgment on Counts I through IV will be granted against CABS.

### B. *Counts VII and VIII (Individual Liability of Hardesty Jr. and Hardesty)*

In Counts VII and VII, Plaintiffs argue that Hardesty Jr. and Hardesty should be held personally liable for the debts of CAM and CABS, respectively. (Am. Compl. ¶¶ 55–67.) The Court construes these counts as restating claims for unpaid contributions under Counts I and II against Hardesty Jr. and Hardesty based on the doctrine of piercing the corporate veil.[4]

The law generally presumes that "acts of the corporation are not acts of the shareholder." *Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 64 (4th Cir. 1989) (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987)); *see also DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976). This presumption of separateness, referred to as the

---

[4] "Piercing the corporate veil is not itself an independent ERISA cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'" *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (quoting 1 C. Keating & G. O'Gradney, Fletcher Cyclopedia of Law of Private Corporations, § 41 (perm. ed. 1990)).

7

"corporate veil," should be disregarded only "reluctantly and cautiously," when "justice so requires." *Keffer*, 872 F.2d at 64 (citing *In re County Green Ltd. P'ship*, 604 F.2d 289, 292 (4th Cir. 1979)). Courts should consider factors such as "gross undercapitalization . . .; failure to observe corporate formalities; nonpayment of dividends; . . . non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a façade for the operation of the dominant [shareholder(s)]." *Keffer*, 872 F.2d at 65 (citing *DeWitt Truck Brokers*, 540 F.2d at 685–87); *see also Sky Cable, LLC v. DIRECTTV, Inc.*, 886 F.3d 375, 385 (4th Cir. 2018) (stating that the same factors apply to corporations and LLCs); *Mayes v. Moore*, 419 F. Supp. 2d 775, 780 n.5 (M.D.N.C. 2006) (citing *Thomas v. Peacock*, 39 F.3d 493, 502–03 (4th Cir. 1994), *rev'd on other grounds sub nom.*, 516 U.S. 349 (1996)) (applying federal common law to veil-piercing claims based on federal causes of action).

With respect to CABS, the record establishes that: Diane Hardesty is the sole owner; CABS responded to a request for production of all corporate records by providing only four pages of documents; and CABS was financed with only $200 in start-up capital provided by Hardesty, personally. This shows a lack of corporate formalities and records, non-functioning or non-existent officers and directors, and inadequate capitalization. Given this clear disregard for the standards governing corporate entities, the Court concludes that providing Hardesty with the protections of the corporate form would work an injustice and veil-piercing is warranted. *Keffer*, 872 F.2d at 65 (emphasizing the "element of unfairness" as "significant" in a veil-piercing claim).

With respect to CAM, Plaintiffs alleged, based on information and belief, that CAM was under-capitalized, failed to follow corporate formalities or keep records, and did not make distributions to shareholders. (Am. Compl. ¶¶ 26–27, 56, 58.) The Court need not decide whether these general allegations, conceded by default, are adequate to support default judgment. In this

case, the development of more specific facts to support veil-piercing was thwarted by Defendants' failure to respond to discovery requests, even after being ordered to do so by the Court. (ECF No. 71.) CAM and Hardesty Jr. are the parties best situated to identify evidence showing adherence to corporate norms. Given that, the Court finds their non-feasance to be an adequate ground to consider facts suggesting CAM's lack of observance of corporate formalities to be conclusively established in Plaintiffs' favor. Fed. R. Civ. P. 37(b)(2)(A)(i) (permitting the court to consider facts sought in discovery as established against a party violating a discovery order).

Accordingly, Plaintiffs made an adequate showing that liability for corporate debts should attach to Hardesty Jr. and Hardesty, and default judgment on Counts VII and VIII will be granted.

### *C. Count V (Injunction)*

In Count V, Plaintiffs seek an injunction ordering CAM and CABS to comply with the CBA and submit accurate reports and timely contributions. (Am. Compl. ¶¶ 45–50.) *See also* 29 U.S.C. § 1132(a)(3) (permitting injunctions against future violations). A plaintiff seeking the extraordinary remedy of an injunction must show: (1) irreparable injury; (2) inadequate remedies at law; (3) that the balance of hardships favors an injunction; and (4) that an injunction would not be counter to the public interest. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The primary harm to Plaintiffs is economic—unpaid required contributions and expenses incurred in attempting to collect. Financial harms are not typically irreparable. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [relief], are not enough."). However, Defendants' default indicates the inadequacy of traditional remedies. The track record of non-participation in this case suggests that future litigation to address violations may face a similar pattern of obstinacy, prolonging Plaintiffs'

financial uncertainty. *See, e.g., Laborers Fringe Benefits Funds Detroit & Vicinity v. Nw. Concrete & Constr., Inc.*, 640 F.2d 1350, 1353 (6th Cir. 1981) (per curiam) (finding "persistent contempt" for the judicial process and "responsibilities under our labor laws" supports injunction).

Furthermore, the last two factors, which weigh most heavily in the analysis, favor an injunction. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (emphasizing the public interest); *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (emphasizing the third factor). Plaintiffs only seek to enjoin future violations of ERISA and the CBA. Compliance with a pre-existing legal obligation cannot fairly be considered a hardship. In addition, an injunction is consistent with the public interest. ERISA was enacted to "protect the integrity and . . . continued viability of multiemployer benefit plans" and ensure employer meet their obligations by "strengthen[ing] enforcement provisions." *See Tr. of Glaziers Local 963 Pension, Welfare & Apprentice Funds v. Walker & Laberge Co., Inc.*, 619 F. Supp. 1402, 1403 (D. Md. 1985). One such enforcement mechanism is the provision expressly contemplating injunctions to prevent future violations. 29 U.S.C. § 1132(a)(3).

Accordingly, the Court finds an injunction ordering compliance with the CBA's reporting and contributions requirements to be warranted. Default judgment will be granted on Count V.

### IV. Conclusion

For the foregoing reasons, an order shall enter granting Plaintiffs' motion to voluntarily dismiss Count VI without prejudice and granting default judgment on all other Counts.

DATED this _15_ day of May, 2019.

BY THE COURT:

_____
James K. Bredar
Chief Judge